858 F.2d 1264
 7 UCC Rep.Serv.2d 159
 INSTITUTO NACIONAL DE COMERCIALIZACION AGRICOLA (INDECA),
Plaintiff- Appellant,
v.
CONTINENTAL ILLINOIS NATIONAL BANK AND TRUST COMPANY, et
al., Defendants- Appellees.
INSTITUTO NACIONAL DE COMERCIALIZACION AGRICOLA (INDECA),
Cross-Appellee,
v.
Deborah BELL, Cross-Appellant.
 Nos. 87-2445, 87-2521.
 United States Court of Appeals,
Seventh Circuit.
 Argued June 1, 1988.
Decided Oct. 4, 1988.
 
 Steven Shobat, Chicago, Ill., for plaintiff-appellant.
 Daniel M. Harris, Mayer Brown & Platt, Deborah Bell, Chicago, Ill., for defendants-appellees.
 Before WOOD, Jr., FLAUM and RIPPLE, Circuit Judges.
 HARLINGTON WOOD, Jr., Circuit Judge.
 
 
 1
 In this diversity action the plaintiff-appellant Indeca asks us to hold that Illinois would recognize a purchaser's cause of action for the tort of negligent misrepresentation against a bank that negligently confirmed that the seller's documents complied with a letter of credit issued by the purchaser's bank. Following from this and its assertion that a proper jury request had been made, Indeca also asks that we uphold an advisory jury's finding that the defendant-appellant Continental was negligent and thereby disregard the district court's finding to the contrary. Illinois has not indicated that negligent misrepresentation extends to the letter of credit situation, and Article 5 of the Uniform Commercial Code, adopted in Illinois and supplemented with letter of credit decisions rooted in the policies underlying Article 5, does not indicate otherwise. Illinois Article 5 governs the transaction here, and thus it is immaterial whether a jury or the court decided the issue under a cause of action not recognized in this context. In addition, in what was filed as a separate appeal, and is now consolidated with Indeca's appeal, cross-appellant Deborah Bell challenges the district court's holdings that she was liable to cross-appellee Indeca for breach of contract and fraud and that Bell's actions resulted in damages of $5 million to Indeca. We affirm.
 
 I. BACKGROUND
 
 2
 Instituto Nacional De Comercializacion Agricola (Indeca), the plaintiff-appellant and cross-appellee, is a purchaser of food products for the people and the country of Guatemala. Indeca contracted with Rumex to purchase 6,000 metric tons of black beans; the purchase price was $5 million. To facilitate the transaction Indeca had its bank, the Banco de Guatemala, issue a letter of credit in favor of Rumex, cross-appellant Deborah Bell (who owned Rumex), and Bell's attorney, Robert Tucker. These three were the beneficiaries of the letter of credit. The letter named the defendant-appellee Continental Illinois National Bank and Trust Company (Continental) as the confirming bank. Under the terms of the letter of credit, Continental would pay Rumex for the beans upon receipt of documents that showed the beans had been loaded on board ship in Hong Kong and were on their way to Guatemala. The beneficiaries presented documentation to Continental's letter of credit department in the early afternoon on Friday, September 5, 1980. Ms. Barta, a Continental employee, examined the documents and concluded that in several ways these documents did not comply with the requirements of the letter of credit: the certificate of origin was not legalized, a draft was missing, the insurance certificate was not satisfactory, and the bill of lading misidentified the shipper.
 
 
 3
 Several of the items were returned to Bell, who resubmitted a new certificate of origin. Apparently Bell submitted the revised document on September 5, but the document was dated September 2. Bell also resubmitted a new certificate of origin, which the plaintiffs assert was typed on a different machine and contained a signature different from that on the original certificate. Indeca claimed Barta failed to notice the alleged discrepancies in the resubmitted documents.
 
 
 4
 The following Monday Barta met with several other Continental employees, Mr. Benzan and Mr. Mrazek, and they decided to contact the steamship company listed as the carrier for the beans. This proved unsuccessful. They also decided to seek a tested Telex and a confirmation in writing that indeed the merchandise was to be loaded in Hong Kong. Neither was ever received. Continental confirmed the transaction on Tuesday and paid on the letter of credit. Continental subsequently sent the documents to Banco de Guatemala.
 
 
 5
 As it turned out the documents were forged, and Indeca never received the black beans. Bell and Tucker, along with Michael Bell, who had also aided the scheme, were convicted of wire fraud (18 U.S.C. Sec. 1343) and of submitting false statements to a federally insured bank (18 U.S.C. Sec. 1014). This court has reviewed and upheld these convictions twice. United States v. Tucker, 836 F.2d 334 (7th Cir.1988), cert. denied, --- U.S. ----, 109 S.Ct. 143, 102 L.Ed.2d 115 (1988); United States v. Tucker, 773 F.2d 136 (7th Cir.1985), cert. denied, 478 U.S. 1021, 106 S.Ct. 3337, 92 L.Ed.2d 742 & 478 U.S. 1022, 106 S.Ct. 3338, 92 L.Ed.2d 742 (1986).
 
 
 6
 Indeca filed this civil action in 1981, alleging breach of contract and fraud against several defendants, including Bell and Continental, and negligence against Continental. In 1983 the district court granted partial summary judgment against Bell and Rumex, finding them liable for breach of contract and fraud. The district court held as it did because Indeca offered sufficient proof of breach and fraud and because Bell offered nothing, beyond her pleadings, to rebut this evidence. Judge Shadur expressly held that this liability finding was not a final judgment because damages remained to be determined. In 1987 Indeca filed a motion for summary judgment against Bell and Rumex; it sought damages in excess of $5 million. Bell filed a motion seeking additional time to respond to Indeca's motion, and this was denied. Bell never did respond to the merits of the motion for damages, and the district court found Rumex and Bell liable for the full amount sought by Indeca.
 
 
 7
 Neither Indeca nor Continental requested a jury trial, but the beneficiaries did make a general jury demand. In 1985 the district court conducted a Rule 42(b)[1] hearing regarding Continental's liability on the fraud and negligence counts, which the parties agreed would be heard by a jury (apparently in the belief that the beneficiaries' general request preserved the jury trial right for them, as well as for the beneficiaries). Continental later protested, seeking a bench trial instead, and the court took the matter under advisement while still allowing the jury to sit, deliberate, and render a decision. The jury determined that Continental had acted negligently. However, the district court subsequently decided that Indeca had no right to a jury trial; therefore, the jury's determination would be treated as advisory only. The district court itself then went on to decide that Indeca had not shown that Continental acted fraudulently, recklessly, or negligently. Furthermore, even if negligence had been shown, the court decided that a claim for negligent misrepresentation did not lie against Continental because it was not in the business of providing information, and it owed no duty to Indeca. 675 F.Supp. 1515 (N.D.Ill.1987).
 
 II. DISCUSSION
 
 8
 The several issues that Indeca raises regarding Continental collapse into only one issue that we need reach in order to decide Continental's liability--whether or not the cause of action for negligent misrepresentation extends to the type of situation we have here. Because we believe that such a claim does not lie in this context, we need not decide whether Indeca was entitled to a jury decision. Even if we assumed, arguendo, that Indeca is correct when it claims it had properly preserved its right to a jury trial, our finding that Illinois does not recognize the tort of negligent misrepresentation in a case such as this makes the jury finding regarding negligence moot. And because Indeca focuses its argument on upholding the jury's finding of negligence and does little to argue fraud and recklessness, we likewise are not concerned with the jury's findings regarding recklessness or fraud. Therefore we will limit our discussion of Continental's liability to negligence, specifically the tort of negligent misrepresentation. As for Bell, we will discuss her appeal in a subsequent section.
 
 Continental
 
 9
 Early in the litigation the district court decided that Continental could be liable under a negligent misrepresentation claim for wrongdoing in the revision process, but not for negligence in the original examination. Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Ill. Nat'l Bank and Trust Co., 530 F.Supp. 279, 284-85 (N.D.Ill.1982). Later in the proceedings subsequent Illinois caselaw persuaded the district court that this decision was in error, and the court decided that because Continental was not in "the business of supplying information for the guidance of others in their business transactions" it could not be held liable under a negligent misrepresentation theory. The district court's decision is a legal conclusion. We review such questions of law de novo. Bright v. Land O'Lakes, Inc., 844 F.2d 436, 438 (7th Cir.1988); United States v. Montoya, 827 F.2d 143, 146 (7th Cir.1987); Gianukos v. Loeb Rhoades & Co., 822 F.2d 648, 652 (7th Cir.1987). And since we have jurisdiction pursuant to the diversity statute, 28 U.S.C. Sec. 1332, we apply the law of the forum state, which means that we first apply the Illinois choice of law rules and then apply the substantive law dictated by those rules. Patton v. Mid-Continent Sys., Inc., 841 F.2d 742, 749 (7th Cir.1988); Casio, Inc. v. S.M. & R. Co., 755 F.2d 528, 530-31 (7th Cir.1985). Here, however, we need not undertake a choice of law analysis; the parties argue Illinois law, and that is what we will apply. We also give some, but not total, deference to the district court's interpretation of the law of its forum state, "especially where the state's supreme court has not spoken to the issue and the intermediate appellate courts are divided." Enis v. Continental Ill. Nat'l Bank & Trust Co., 795 F.2d 39, 40 (7th Cir.1986). This deference has little practical effect here, however, because we will not reach the district court's decision that under Illinois law Continental was not in the business of supplying information to third parties and thus was outside the reach of a negligent misrepresentation action.
 
 
 10
 Indeca argues that Rozny v. Marnul, 43 Ill.2d 54, 250 N.E.2d 656 (1969), is the only Illinois Supreme Court case that thoroughly discusses the requirements of a cause of action for negligent misrepresentation. Indeca further contends that two recent Illinois Supreme Court decisions, Moorman Mfg. Co. v. National Tank Co., 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982); Anderson Elec., Inc. v. Ledbetter Erection Corp., 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986), do not alter the Rozny reasoning because any discussion of negligent misrepresentation was dictum. Indeca also points out that Illinois appellate decisions are in conflict on at least one important component of the tort--whether a defendant must be in the business of supplying information. We need not discuss the components of negligent misrepresentation. The correct and prudent approach, and one that avoids an unnecessary and potentially incorrect delineation of an opaque issue of Illinois law by this court, is to consider generally whether the letter of credit situation is even amenable to the tort of negligent misrepresentation, irrespective of that tort's requirements.
 
 
 11
 Continental emphasizes the unique and separate body of law that has developed around the use of the letter of credit, particularly Article 5 of the Uniform Commercial Code, which has been adopted in Illinois, and the Uniform Customs and Practice for Documentary Credits, which was incorporated into the Rumex-Indeca letter of credit. We agree that Article 5, the portion of the Uniform Commercial Code that governs letter of credit situations, must be the starting point for our analysis. Ill. Ann. Stat. ch. 26, paragraphs 5-101 to -117 (Smith-Hurd 1963 and Smith-Hurd Supp.1988).
 
 
 12
 As Indeca points out, Illinois Article 5 "deals with some but not all of the rules and concepts of letters of credit as such rules or concepts have developed prior to this Act or may thereafter develop." Ill.Ann.Stat. ch. 26, p 5-102(3) (Smith-Hurd 1963). And the inclusion of a rule under Illinois Article 5 in and of itself does not "require, imply or negate application of the same or a converse rule to a situation not provided for or to a person not specified by this Article." Id. Commentary accompanying the UCC also recognizes that Article 5 is not the only word on letter of credit law:
 
 
 13
 [I]n the present state of the law and variety of practices as to letters of credit, no statute can effectively or wisely codify all the possible law of letters of credit without stultifying further development of this useful financing device. The more important areas not covered by this Article revolve around the question of when documents in fact and in law do or do not comply with the terms of the credit. In addition such minor matters as the absence of expiration dates and the effect of extending shipment but not expiration dates are also left untouched for future adjudication. The rules embodied in the Article can be viewed as those expressing the fundamental theories underlying letters of credit. For this reason the second sentence of subsection (3) makes explicit the court's power to apply a particular rule by analogy to cases not within its terms, or to refrain from doing so. Under section 1-201(1) such application is to follow the canon of liberal interpretation to promote the underlying purposes and policies. Since the law of letters of credit is still developing, conscious use of that canon and attention to fundamental theory by the court are peculiarly appropriate.
 
 
 14
 U.C.C. Sec. 5-102 comment 2, reprinted following Ill.Ann.Stat. ch. 26, p 5-102 (Smith-Hurd 1963). As the Illinois Code and the comments to the UCC recognize, Article 5 may not explicitly cover every conceivable letter of credit situation.
 
 
 15
 Nevertheless, when carefully read, the comments are not as extraordinary as Indeca would like us to believe. The comment that Article 5's principles may be extended to other situations not listed recognizes that not every situation could be provided for in the Code, and even if it could, the rules might be overly complex, restrictive, and confusing if such an attempt was made. The flexibility accorded by the Code, however, should not be mistaken for approval to range far and wide over the legal landscape in search of legal theories to invoke against the parties to a letter of credit transaction. The flexibility accorded is limited by the underlying policies of letter of credit law and Article 5. As the comments to the Illinois Code state, paragraph 5-102(3) is intended to "encourage the development of the law by usage of trade and by agreements such as the Uniform Customs and Practice for Commercial Documentary Credits Fixed by the Thirteenth Congress of the International Chamber of Congress." Ill. Ann. Stat. ch. 26, p 5-102(3) comment (Smith-Hurd 1963). In large part then adapting letter of credit principles to varying situations in a way that encourages the use of letters of credit is the approved task under Article 5; adapting tort principles not expressly adopted and that tend to discourage the use of such devices is not.
 
 
 16
 All letters of credit are bottomed on the principle "that the parties are not required to look beyond the face of the documents presented." Auto Servicio San Ignacio, S.R.L. v. Compania Anonima Venezolana De Navegacion, 765 F.2d 1306, 1310 (5th Cir.1985) (emphasis in original). The Uniform Customs and Practice for Documentary Credits, Article 7 (1974), which was incorporated into the Indeca-Rumex letter of credit, uses similar language. As Judge Higginbotham wrote in Auto Servicio, "in letter of credit transactions, facial compliance is, and indeed must be, the watchword. We can require no more of [the advising, confirming, and paying bank] if we are to remain faithful to the statutory scheme as well as the customs and practices behind letters of credit." Auto Servicio, 765 F.2d at 1311. Imposing a greater duty on a confirming bank by, for example, holding it liable for negligent misrepresentation, is inconsistent with the underlying premise of letter of credit law. "The exchange function of the letter of credit rests upon objective predictable standards with defined expectations and risks. Injecting the uncertainty of the tort principles contended for is inconsistent with these necessities and is not supported by the Code, which implicitly rejects them." Id. at 1308. Moreover, Auto Servicio holds that to the extent a confirming bank owes any duty, or duty-like obligation, it owes that duty to its customer, the issuing bank, and not the ultimate customer, which in this case is Indeca. Id. Professors White and Summers do briefly suggest that injured parties to a letter of credit transaction may have a tort remedy in some circumstances. J. White & R. Summers, Uniform Commercial Code, Sec. 18-5, at 727 (2d ed. 1980). Their detailed discussion regarding injuries that follows, however, does not mention or suggest that the negligent misrepresentation tort asserted here is a proper cause of action in this context. Id. Sec. 18-7, at 740-45.
 
 
 17
 Indeca questions the applicability of certain of Article 5's rules to a confirming bank, and thus the relevance of Auto Servicio to our situation because of that court's reliance on these same allegedly inapplicable rules. Granted, several of the rules, such as paragraph 5-109 and paragraph 5-114,[2] speak of an issuer's obligation, and not expressly a confirming bank's obligation, but this is immaterial because "the confirming bank has the same obligations to the issuing bank, viewed as its customer, as the issuing bank has to its original customer." Banque Paribas v. Hamilton Indus. Int'l, Inc., 767 F.2d 380, 384 (7th Cir.1985). Thus, pursuant to paragraph 5-109, Continental was obligated under the Code to act in "good faith" and to ascertain whether the documents on their face appeared to comply with the letter of credit. Our reading of the Code and of Auto Servicio does not suggest a further duty.
 
 
 18
 In sum, the language of the Code is especially important when, as here, there are few cases on the role of negligence in the letter of credit situation. Illinois has not spoken on the subject, except that it has adopted Article 5, and as far as we can see, it has carved out no exceptions of the type suggested by Indeca. Specifically, there is no Illinois case applying the tort of negligent misrepresentation to a letter of credit or analogous transaction, and Article 5 does not suggest that such a cause of action is appropriate here. We cannot extend Illinois law as Indeca would like. Such a decision is for the courts of Illinois and not for a federal court sitting in diversity.
 
 Bell
 
 19
 Also a party to this appeal is Deborah Bell, who is representing herself. Bell's appeal, docketed in this court September 22, 1987, is No. 87-2521. Indeca's appeal, which is discussed above, was docketed September 10, 1987, and is No. 87-2445. In an order dated September 28, 1987, this court ordered the Indeca and Bell appeals consolidated for both briefing and disposition. The order, at least in part, realigned the parties and Bell, the appellant when filing No. 87-2521, was ordered to file a combined responsive pleading and cross-appeal to Indeca's appeal (as a result of the consolidation, Bell's claim in No. 87-2521 was redesignated a cross-appeal). The order also required that all filings carry the designation of both case numbers. On November 19, 1987, before Indeca had filed its opening appellant's brief, Bell filed her "Brief for Appellant," in which she raised only the issues of her cross-complaint and made no effort to respond to any anticipated arguments (she could only anticipate the particular arguments since she had not waited to see what the arguments actually were) that Indeca might raise in the main appeal, No. 87-2445. Bell's brief included only the designation of her appeal, No. 87-2521, and it is unclear whether she understood this court's consolidation order and briefing schedule. Her later motion for an extension of time in order to file a reply brief was denied. Neither Indeca nor Continental responded in any way to Bell's cross-appeal; we can only guess as to the reason, except to note it may have something to do with Bell's likely inability to satisfy any significant portion of the $5 million judgment against her. It is much more likely that Continental could pay such a large sum.
 
 
 20
 Whatever the reasons, as it now stands, in Bell's role as appellee in No. 87-2445, she failed to respond. Likewise, in Indeca's role as appellee in No. 87-2521, it failed to respond. Circuit Rule 31(d) states that when an appellee fails to timely file a brief "the clerk shall enter an order requiring the appellee to show cause within 14 days why the case should not be treated as ready for oral argument or submission and the appellee denied oral argument." The related Federal Rule of Appellate Procedure is similar except that it states that the appellee will not be heard unless permission is granted by the court. Fed.R.App.P. 31(c); United States v. Raimondi, 760 F.2d 460, 462 n. 1 (2d Cir.1985). Circuit Rule 31(d) then instructs that the court will take appropriate action, which usually means that the court will decide the case solely on the brief of the appellant. See United States v. Everett, 700 F.2d 900, 902-03 n. 5 (3d Cir.1983). Here the clerk did not enter an order to show cause, but that is immaterial. Indeca mentioned nothing regarding Bell's appeal at oral argument and likewise Bell did not challenge the Indeca-Continental appeal during her argument to this court. Even though the practical effect of the incomplete briefing in this case may be negligible, we admonish litigants in future cases to more closely follow the rules of this court. We consider an appellee's violation of briefing schedules and filing responsibilities a serious breach and will strictly apply the denial of oral argument provisions of the circuit and federal appellate rules. See Stotler and Co. v. Able, 837 F.2d 1425, 1427 (7th Cir.1988) (appellant failed to timely file brief). Therefore, we deem it appropriate to consider the merits of Bell's appeal, relying on the arguments she presented as cross-appellant in No. 87-2521 and on the record before us. Any argument by Indeca regarding Bell's appeal will not figure into our decision.
 
 
 21
 Bell challenges both the finding of liability and the imposition of damages. The district court, in its 1983 order, granted Indeca's motion for partial summary judgment, finding Bell and Rumex liable under breach of contract and fraud theories. Instituto Nacional De Comercializacion Agricola (Indeca) v. Continental Ill. Nat'l Bank and Trust Co., 576 F.Supp. 991 (N.D.Ill.1983). Bell does not challenge the district court's contract finding on appeal. Even if she had, the district court's decision rests on a firm foundation, and we would not upset it. Indeca submitted affidavits showing the existence of a Rumex-Indeca contract, the admission that delivery could not be made, issuance of the letter of credit and its confirmation by Continental, and Banco's liquidation of the letter to Rumex. Rumex and Bell offered nothing in response except to note that they relied on their pleadings. Indeca's properly made and supported motion for summary judgment cannot be defeated by Bell's and Rumex's reference to their pleadings alone. Fed.R.Civ.P. 56(e).
 
 
 22
 In its 1983 order the district court also found Bell and Rumex liable on a fraud theory. As with the breach of contract claim, Bell and Rumex relied solely on their pleadings to defend against the partial motion for summary judgment. Pleadings alone are insufficient to defeat the partial motion for summary judgment here. Id. Even if Bell had properly responded to the motion she still could not prevail. The district court, in analyzing defendant Tucker's liability for fraud, first looked to Illinois choice of law rules, which indicated that the collateral estoppel or res judicata effect of a judgment is determined by the law of the jurisdiction where the judgment was rendered. Therefore, Seventh Circuit law controls the effect to be given a criminal conviction in this circuit. As the district court then correctly determined, in this circuit issues actually litigated for purposes of a criminal conviction conclusively establish those issues for later federal civil litigation. See Nathan v. Tenna Corp., 560 F.2d 761, 763 (7th Cir.1977). Applying the district court's reasoning to Bell, all of the elements of Bell's fraud, except for reliance by Indeca, would be established for the civil proceeding. And reliance was established because Bell did not challenge this assertion either at trial or on appeal. The district court correctly found Bell liable on a fraud theory.
 
 
 23
 Finally Bell challenges the district court's 1987 order granting Indeca's motion for partial summary judgment on damages, which resulted in a damage award in favor of Indeca, and against Bell and Rumex, in an amount in excess of $5 million. Indeca filed its motion August 6. The court decided the issue after notifying Bell by a letter dated August 7, 1987, that she must file a response by August 24, 1987, because the court intended to rule on the motion and announce its decision August 28, 1987. Bell responded by requesting an extension of time because her imprisonment limited her access to necessary records, and she was unaware that she had been found liable by the district court's 1983 order. This request for an extension, according to Bell, was sent before August 24. As for the date, all that we can ascertain with any accuracy is that the district court received the request sometime on or before August 27.
 
 
 24
 In denying the continuance the district court pointed out that it expected only that Bell give "some suggestion" of what she might be able to pose that could create a material issue of fact. As the district court noted, she had failed to do so, not even giving a "hint of any defense on the merits." Bell also failed to persuade the district court that she was unaware that her liability had been established earlier in the proceedings. The court also noted that it was inappropriate to further delay the entry of a final judgment. Indeca was entitled to such an entry, according to the district court, so that it could, if it chose, appeal the decision regarding Continental.
 
 
 25
 General Rule 13(a) of the District Court for the Northern District of Illinois directs that a party file an answering memorandum within ten days of an opponent's filing of a motion, and General Rule 13(c) allows the district court to shorten or extend the time fixed by Rule 13 for the filing of supporting answering briefs. Counting the days the district court provided Bell to respond to the summary judgment motion, excluding legal holidays and weekends (pursuant to Fed.R.Civ.P. 6(a) legal holidays and weekends are not counted when the period of time allowed is less than eleven days), it is obvious that Bell had more than the ten days allowed by General Rule 13(a). Under these circumstances, the district court's denial of an extension of time was not an abuse of discretion. United States v. Kasuboski, 834 F.2d 1345, 1351-52 (7th Cir.1987). Even if we did review the substantive challenges Bell raises, the record in no way undermines the amount of damages set by the district court. Therefore, the district court's decision, based on the prior conviction and order of restitution in excess of $5 million, the Rumex-Indeca contract, and various other items demonstrating the amount of damages, all of which are uncontroverted, was correct. See Fed.R.Civ.P. 56(e).
 
 III. CONCLUSION
 
 26
 Indeca has failed to demonstrate that Illinois would recognize a purchaser's cause of action for negligent misrepresentation against a confirming bank that negligently confirmed that a seller's documents complied with a letter of credit issued by the purchaser's bank. Indeca's failed effort to extend negligent misrepresentation to the situation here eliminates any need for us to consider whether a jury or the court was the proper decision maker on this issue.
 
 
 27
 Likewise Bell has failed to demonstrate that the district court's finding of liability and determination of the amount of damages was in error.
 
 
 28
 Therefore, the decision of the district court is
 
 
 29
 AFFIRMED.
 
 
 
 [1]
 Fed.R.Civ.P. 42(b)
 
 
 [2]
 Ill.Ann.Stat. ch. 26, p 5-109 (Smith-Hurd 1963); Ill.Ann.Stat. ch. 26, p 5-114 (Smith-Hurd Supp.1988)