**S.A.I., INC., Plaintiff,**

v.

**GENERAL ELECTRIC RAILCAR SERVICES CORPORATION and ABC Rail Products Corp., Defendants.**

No. 96–2025–KHV.

United States District Court, D. Kansas.

June 27, 1996.

---

David R. Morris, Lon Walters, Dean Nash, The McLeod Law Firm, Kansas City, MO, David G. Summers, Summers & Johnson, P.C., Kansas City, MO, for S.A.I., Inc.

Michaela M. Warden, Stacy Y. Daniels, Spencer, Fane, Britt & Browne, Overland Park, KS, Laurie D. Jaffe, Fredrick H. Bates, Charles G. Albert, Albert, Bates, Whitehead & McGaugh, P.C., Chicago, IL, for General Electric Railcar Services Corp. and General Electric Railcar Wheel and Parts Service Corp.

Joseph Rebein, Joseph G. Matye, Shook, Hardy & Bacon L.L.P., Kansas City, MO, Michael L. Shakman, Thomas M. Staunton, Diane F. Klotnia, Miller, Shakman, Hamilton, Kurtzon & Schlifke, Chicago, IL, for ABC Rail Products Corporation.

### MEMORANDUM AND ORDER

VRATIL, District Judge.

This matter is before the Court on *Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted* (Doc. # 28) filed March 15, 1996. Plaintiff, S.A.I., INC., ("SAI") filed a four-count complaint against defendants General Electric Railcar Services Corporation ("GERSCO") and ABC Rail Products Corporation ("ABC"), alleging breach of contract and conversion arising from the 1995 transfer of an inventory control software program from its licensee GERSCO to ABC. SAI seeks damages for the reasonable market value of the Licensed Programs and Source Codes, as well as punitive damages. Count I of its complaint alleges conversion by GERSCO. Count II alleges conversion by ABC. Count III alleges breach of contract by GERSCO. Count IV seeks punitive damages from both defendants based on the allegation that their conduct was willful and malicious. ABC, on the other hand, contends that it is a valid licensee and denies that plaintiff is entitled to any damages, compensatory or punitive.[1] For the reasons set forth below, defendant's motion to dismiss is denied.

---

1. This motion was filed only on behalf of ABC and involves only the claims asserted by SAI

## A. THE STANDARD FOR RULING ON A 12(b)(6) MOTION TO DISMISS

In order to prevail on a motion to dismiss for failure to state a claim, the moving party must meet a high standard. *Cayman Exploration Corp., v. United Gas Pipe Line Co.,* 873 F.2d 1357 (10th Cir.1989). Rule 12(b)(6) must be read in conjunction with Rule 8 which requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8. Therefore, under the Federal Rules, a plaintiff is not required to set forth in detail the facts upon which he bases his claim. *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102–03, 2 L.Ed.2d 80 (1957). Such simplified "notice pleading" is made possible by the availability of discovery and other pretrial procedures established by the Rules which serve to define more precisely the issues and facts relevant to the dispute. *Id.* at 47–48, 78 S.Ct. at 103. Furthermore, in reviewing the sufficiency of a complaint, the Court should read the complaint in the light most favorable to the plaintiff with all doubts resolved in his favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Mitchell v. King,* 537 F.2d 385, 386 (10th Cir.1976). All well-pleaded facts and allegations in the complaint must be taken as true and the "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102; *Kennedy v. Meacham,* 540 F.2d 1057, 1060 (10th Cir.1976).

## B. FACTS

The following facts are uncontroverted or, where controverted, construed in the light most favorable to plaintiff.

### 1. *The License Agreement between SAI and GERSCO*

In April 1989, SAI and GERSCO entered into a contract in which SAI agreed to develop an inventory control system for the parts business of GERSCO. On October 8, 1990, SAI and GERSCO also entered into a computer software license agreement (the "License Agreement") governing GERSCO's use of the software programs (the "Licensed Programs") and the associated computer source codes (the "Source Codes") for the inventory control system. GERSCO, as licensee, agreed to pay SAI $200,000 for the rights it acquired under this License Agreement.

Under the agreement, SAI granted GERSCO a license to use, change, and modify any Licensed Program and Source Code. The License Agreement expressly stated, however, that ownership of the Licensed Programs and Source Codes was to remain with SAI. License Agreement ¶ 4. GERSCO also agreed not to disclose the Licensed Programs and Source Codes to anyone other than its officers, employees, contractors or consultants. License Agreement ¶ 5.

The License Agreement gave GERSCO the right to transfer or assign its license to any purchaser or assignee of all or a substantial portion of GERSCO's facilities at the licensed sites provided that: (1) the transferee first agreed in writing to assume all of GERSCO's obligations with respect to the Licensed Programs and Source Codes; and (2) a copy of the written agreement was provided to SAI. License Agreement ¶ 2a. Furthermore, under the License Agreement, GERSCO was required to notify SAI in writing thirty days in advance of any such proposed transfer. Within twenty days of receipt of such notice, SAI would be required to notify GERSCO in writing of its intent, if any, to withhold its consent to the transfer. License Agreement ¶ 2b. SAI would be required to demonstrate by clear and convincing evidence good cause, based upon prior conduct of the transferee with respect to the Licensed Programs or prior transactions with the licensor, for withholding such consent. License Agreement ¶ 2b.

The License Agreement also defined the parties rights in the event of a breach by stating:

> In the event LICENSEE fails materially to perform or observe any of its obligations under this Agreement, and LICENSEE

against ABC (Counts II and IV).

fails to commence taking effective corrective action within thirty (30) days following notice thereof by the LICENSOR, then the LICENSOR, in addition to any right to monetary damages that it may have at law, may immediately upon written notice ... withdraw LICENSEE's license hereunder to change and modify the Licensed Programs and Source Codes. License Agreement ¶ 7b.

Finally, the License Agreement provided that the legal relations of the parties under the agreement would be construed in accordance with Illinois law. License Agreement ¶ 13.

### 2. The Asset Purchase Agreement Between GERSCO and ABC

On April 3, 1995, GERSCO agreed to sell ABC a substantial portion of the assets at the five sites and the facility mentioned in the License Agreement with SAI. The Asset Purchase Agreement provided for a closing date on or before May 15, 1995. Prior to the closing of the Asset Purchase Agreement, GERSCO personnel demonstrated to ABC personnel the use of the Wheel System. The "Wheel system" is a term used by the parties to collectively refer to the software that was developed under the Parts Program Agreement and was the subject of the License Agreement. The Asset Purchase Agreement closed on May 15, 1995. Subsequent to the closing of the transaction ABC continued to use the Wheel System.

### 3. The Correspondences

On May 2, 1995, GERSCO sent SAI a document (the "May 2 Notice") entitled "Notice and Consent of Assignment and Conveyance of Wheel System/K–Man Contract". In this document, GERSCO described its Asset Purchase Agreement with ABC and its intent to transfer to ABC all of its right, title, and interest in the Wheel System on or prior to May 15, 1995. The document further stated:

"ABC Rail will assume all of the obligations of GE Railcar Wheel arising after the Closing Date respecting the WheelSystem/K–Man Contract."

On May 10, 1995, SAI responded by sending GERSCO a letter ("the May 10 letter") objecting to the transfer of rights in the Wheel System to ABC. Then on May 15, 1995, SAI sent GERSCO a second letter ("the May 15 letter") which stated that SAI considered GERSCO to have materially breached the License Agreement because: (1) SAI had never received any written agreement by ABC stating that it would assume GERSCO's obligations pursuant to the License Agreement; (2) GERSCO failed to provide SAI with 30 days notice before the proposed transfer; (3) ABC was not a licensee as the term was defined under the License Agreement and therefore, GERSCO's disclosure of the Licensed Programs to ABC was a violation of the confidentiality provisions of the License Agreement; and (4) SAI withheld its consent to any proposed transfer to ABC based on ABC's having participated with GERSCO in the unauthorized disclosure of information. The letter ended with SAI's remark that the only resolution that it could see was for either ABC or GERSCO to negotiate a buyout of full rights in the software. Otherwise, SAI stated it would have no option but to seek legal redress.

## C. ANALYSIS

In its motion for dismissal, defendant argues that SAI's complaint fails to state a claim for two separate and independent reasons: (1) Under Illinois law which governs the contract, the "economic loss doctrine" bars SAI's claim against defendant[2]; and (2) SAI's actions denied GERSCO the contractually required 30 day period in which to cure any breach of the contract.

### 1. The Economic Loss Doctrine

Defendant asserts that the economic loss doctrine bars SAI from recovering in tort the economic losses suffered as a result of GERSCO's breach of contract. Specifically, defendant argues that: (1) the economic loss

---

2. In its brief, SAI contends that the choice of law provision in the License Agreement requiring Illinois law to govern disputes does not apply to the conversion claim against ABC, because ABC was not a party to the contract and it never became a licensee under the contract. For purposes of the motion to dismiss, however, SAI does not dispute that Illinois law is controlling.

doctrine applies regardless of the fact that no contractual relationship existed between it and SAI; (2) the doctrine is not limited to tort suits arising from allegedly defective products; and (3) the doctrine precludes the type of damages sought by SAI.

Plaintiff, on the other hand, contends that: (1) privity of contract must exist for the economic loss doctrine to apply; (2) the doctrine is inapplicable to its claim because under Illinois law, it has only been applied in situations with either defective products or defective performance of contractually obligated rights; and (3) its claim for the fair market price of the software wrongfully converted does not represent the type of damages traditionally barred by the doctrine, *i.e.* cost of repair, inadequate value, and lost profits.

■ The economic loss doctrine bars tort liability when only economic losses result from a defective product and there is neither personal injury to the plaintiff nor damage to the plaintiff's other property. *See, e.g., Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). Contract law, through the use of express and implied warranties, provides the exclusive remedy in such cases. The rationale behind the rule is that economic injuries are contractual in nature when they involve the sale of a product, and as such, are best left to contract law principles. *Id.,* 61 Ill.Dec. at 753, 435 N.E.2d at 450. The seminal case on the economic loss doctrine is *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 403 P.2d 145 (1965). In *Seely,* the owner of a defective truck that had overturned without injuring anyone sued on theories of breach of express warranty and strict liability in tort. Plaintiff sought damages for repair, for lost profits, and for money he had paid to purchase the truck. The court refused to permit recovery on a theory of strict liability because the plaintiff had suffered only economic loss from the product's defective performance. Writing for the court in *Seely,* Chief Justice Traynor reasoned that:

> "[a] consumer should not be charged at the will of the manufacturer with bearing the risk of physical injury when he buys a product on the market. He can, however, be fairly charged with the risk that the product will not match his economic expectations unless the manufacturer agrees that it will." *Id.,* 45 Cal.Rptr. at 23, 403 P.2d at 151.

Illinois courts adopted the economic loss doctrine in *Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 435 N.E.2d 443 (1982). In *Moorman* the plaintiff purchased a grain storage tank from the defendant. When a crack developed in the tank, the plaintiff filed suit seeking to recover for the losses incurred in repairing the tank as well as for consequential losses related to lost use of the tank. The plaintiff sued under the theories of strict liability, negligence, and misrepresentation. The Illinois Supreme Court found that the losses claimed were economic losses and barred recovery for them in tort.

■ The Court agrees with defendant in this case that under Illinois law, privity of contract is not a prerequisite for application of the economic loss doctrine. *See Anderson Elec., Inc., v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 104 Ill.Dec. 689, 692–93, 503 N.E.2d 246, 249–50 (1986) ("A plaintiff seeking to recover purely economic losses … cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract"); *Rardin v. T & D Mach. Handling, Inc.,* 890 F.2d 24 (7th Cir.1989) (buyer of printing press cannot recover lost profits in tort action against contractor which had dismantled press for seller when press was damaged during dismantling; economic loss doctrine operates even absent contract between the parties). Thus the fact that SAI does not have any alternative remedy against ABC does not preclude the economic loss doctrine.

■ Defendant's second argument must fail, however, as the Court finds that the type of claim asserted by SAI is not one which has traditionally been barred by the economic loss doctrine. Under Illinois law, the economic loss doctrine has been construed as barring product liability claims that arise from a qualitative defect relating to the purchaser's disappointed expectations concern-

ing the product's fitness to perform its intended function. *Moorman,* 61 Ill.Dec. at 753, 435 N.E.2d at 450. In the context of suits involving computer transactions, this language has been interpreted to bar suits where the losses claimed have related to some alleged defect in the computer product itself. *See, e.g., Black, Jackson, & Simmons Ins. Brokerage, Inc., v. Int'l Business Machs. Corp.,* 109 Ill.App.3d 132, 64 Ill.Dec. 730, 440 N.E.2d 282 (1982) (suit for alleged failure of the system to function as expected).

Our facts are very different. SAI's conversion claim does not state that there is a defect in the software or that the software is somehow unable to perform its intended job. Rather, SAI's claim goes to a matter peripheral to the product, *i.e.* the manner in which GERSCO transferred it. Defendant relies heavily on *Braman v. Woodfield Gardens Assocs.,* 715 F.Supp. 226 (N.D.Ill.1989) and *Amann v. Sylvania Aero Enterprises,* 1989 WL 111852 (N.D.Ill.1989), as support for its proposition that the economic loss doctrine bars conversion claims such as SAI's. *Braman* and *Amann* are distinguishable, however, in that the conversion claims in those cases were based on a dissatisfaction with the quality of the product being sold and therefore fell squarely within the line of past product liability suits precluded by the doctrine.[3]

■ The policy rationale underlying the use of the economic loss doctrine also argues against its applicability to the facts of this case. The economic loss doctrine serves to protect against infringement of the remedies that have been articulated by the Uniform Commercial Code, as well as to guard the manufacturer against unlimited liability in its manufacture of products. *See, e.g., Moorman Manufacturing Co. v. National Tank Co.,* 91 Ill.2d 69, 61 Ill.Dec. 746, 749, 435 N.E.2d 443, 447 (1982); *Seely v. White Motor Co.,* 63 Cal.2d 9, 45 Cal.Rptr. 17, 23, 403 P.2d 145, 151 (Cal.1965). Here, SAI's claim goes

not to the fitness or merchantability of the software but rather to its wrongful possession; therefore, there is no threat of encroachment on UCC warranty law. Also, because the claim in this case is being brought by the seller not the buyer, the specter of unlimited manufacturer liability is similarly not implicated.

Defendant nevertheless argues that the doctrine is applicable because the method of transfer of the license was a contractually obligated act and under Illinois law, the economic loss doctrine bars tort claims for defective performance of contractually obligated acts. The Court notes that it is true that Illinois courts have extended the doctrine beyond the product liability realm to bar tort claims of contractually obligated acts. *See Anderson Elec., Inc. v. Ledbetter Erection Corp.,* 115 Ill.2d 146, 104 Ill.Dec. 689, 503 N.E.2d 246 (1986). In such situations, however, the contract at issue has typically been one for services, with the alleged defective act forming the basis of the contract. The basic thrust of the SAI and GERSCO License Agreement was for the sale of a license. The fact that there was a provision stipulating the method of transfer does not transform the contract into one for services. Thus, SAI's claim for conversion against ABC (Count II) states a type of harm for which the economic loss doctrine is not applicable.[4]

### 2. *Failure to Provide Contractually Required Cure Period*

Defendant moves to dismiss SAI's claim on the alternate ground that SAI did not afford GERSCO the contractually required 30 day time period to cure any alleged breach and it therefore is barred under Illinois law from asserting its claim. Specifically, defendant points to the letters sent by SAI to GERSCO and SAI's statement in those letters regarding a GERSCO and ABC buyout of all rights to the licensed software. Defendant contends that these remarks by SAI clearly

---

3. *Amann,* 1989 WL 111852 (N.D.Ill.1989), involved allegedly defective airplane engine parts. *Braman,* 715 F.Supp. 226 (N.D.Ill.1989) involved dissatisfaction with their investment in certain real estate units.

4. Because it already has been determined that SAI alleges a tort claim of the type not barred by the economic loss doctrine, the Court need not reach ABC's third contention that the nature of damages sought by SAI are economic and therefore precluded by the doctrine.

reveal that SAI did not afford GERSCO the 30 day period in which to cure any alleged breach.

■ The Court finds that this is not a valid reason for dismissal. Plaintiff correctly argues in its brief that the instances to which defendant points as providing the basis for its motion to dismiss reveal only areas of factual dispute. Whether GERSCO followed the requisite method of transfer under the License Agreement with its May 2 Notice, whether SAI's remarks amounted to a denial of the period to cure, and similar questions raised by defendant's motion would require interpretation of the language of the contract, the correspondence, and the surrounding circumstances at the time—items which are not the appropriate subject of a 12(b)(6) motion. Furthermore, the cases cited by defendant in support of its theory fail to provide any support to its argument.[5] Instead they reinforce the point that whether a party has failed to provide the contractually provided time to remedy a breach is not a question that can be appropriately resolved on a 12(b)(6) motion. ABC cannot color SAI's remarks and actions in the light most favorable to its view of the License Agreement and then point to them as evidence of SAI's failure to abide by the contract. In fact, for the purposes of appraising the sufficiency of a complaint under a Rule 12(b)(6) motion, the Court should construe the complaint in the light most favorable to the plaintiff with all doubts resolved in his favor. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

**IT IS THEREFORE ORDERED** that *Defendant's Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted* (Doc. # 28) filed March 15, 1996, be and hereby is overruled.

---

**5.** In *Canteen Corp. v. Former Foods, Inc.,* 238 Ill.App.3d 167, 179 Ill.Dec. 342, 352, 606 N.E.2d 174, 184 (1992), the appellate court reversed the trial court's decision which vacated an arbitration award to the defendant on its breach of contract counterclaim against the plaintiff. In *Mannion v. Stallings & Co., Inc.,* 204 Ill.App.3d 179, 149 Ill.Dec. 438, 561 N.E.2d 1134 (1990), the appellate court affirmed a directed verdict. In *Magnuson v. Schaider,* 183 Ill.App.3d 344, 131 Ill.Dec. 753, 764, 538 N.E.2d 1309, 1320 (1989), the appellate court reversed a summary judgement in favor of the defendant after finding there was a material question of fact as to whether the plaintiff was allowed the contractually required time to cure the default.