(No. 62293.—

ANDERSON ELECTRIC, INC., Appellant, v. LEDBET-
TER ERECTION CORPORATION *et al.* (C-E
Walther, Inc., Appellee).

*Opinion filed November 20, 1986.—Rehearing denied*
*January 30, 1987.*

SIMON, J., specially concurring.

Sorling, Northrup, Hanna, Cullen & Cochran, Ltd., of Springfield (Stephen R. Kaufmann and Stephen A. Tagge, of counsel), for appellant.

Gary M. Peplow and David L. Requa, of Heyl, Royster, Voelker & Allen, of Springfield, for appellee C-E Walther.

Robert J. Glenn, Thomas A. Demetrio and David A. Novoselsky, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

John E. Guy, of Chicago (Victor J. Piekarski, of counsel), for *amicus curiae* Illinois Association of Defense Trial Counsel.

JUSTICE WARD delivered the opinion of the court:

Anderson Electric, Inc. (Anderson), the plaintiff, filed a two-count complaint against Ledbetter Erection Corporation (Ledbetter) and C-E Walther, Inc. (Walther), in the circuit court of Sangamon County. The first count alleged breach of contract by Ledbetter; count II alleged negligence by Walther. The court granted Walther's motion to dismiss count II on the ground that it failed to state a cause of action in tort, and found under our Rule 304(a) that there was no just reason to delay appeal to the appellate court (87 Ill. 2d R. 304(a)). That court affirmed the dismissal of count II (133 Ill. App. 3d 844),

and we allowed the plaintiff's petition for leave to appeal under our Rule 315 (103 Ill. 2d R. 315).

The first count of the complaint was not disposed of and pends against Ledbetter in the circuit court.

Upon a motion to dismiss, of course, all facts properly pleaded in the complaint and those contained in exhibits made part of the complaint are to be taken as true for purposes of the motion. *Soules v. General Motors Corp.* (1980), 79 Ill. 2d 282, 284.

Anderson alleged that it entered into a contract with Ledbetter to perform certain electrical work on precipitator units, manufactured by Walther, which were to be installed at a Commonwealth Edison facility near Kincaid, Illinois. The contract incorporated Walther's Precipitator Erection Manual (manual), which provided plans and specifications for the electrical work on the precipitator. A contract between Ledbetter and Walther provided that the electrical work was to be performed in accordance with the manual. Under the manual's terms Walther was to inspect specified portions of the project as they were installed; and upon discovering any deviations from the specifications, Walther was to promptly inform the contractor, Ledbetter, so that corrections could be made without delay. The contract between Ledbetter and Anderson also provided that Ledbetter was to inspect Anderson's work as it was performed. Anderson made no allegation in its complaint of a contractual relationship with Walther; in fact, it is agreed that there was none.

Anderson, in the second count, alleged that although its performance was in a "workmanlike manner and was accepted as performed," Walther improperly required much of the work to be redone, causing Anderson to incur additional costs of $288,802.44. Anderson alleged that Walther failed to perform a service, in that it undertook a duty, as its manual provided, to supervise and in-

spect the plaintiff's work during installation, and as it had negligently failed to perform that duty, Walther was liable to Anderson.

The trial court, in granting Walther's motion to dismiss Anderson's negligence count, relied on *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 91, in which this court held that solely economic losses, broadly speaking, are not recoverable in tort. The appellate court affirmed the trial court, and we granted Anderson's petition for leave to appeal.

In *Moorman*, the plaintiff purchaser sued the defendant manufacturer-seller of a grain-storage tank to recover repair costs and loss of use of the tank. The complaint alleged, *inter alia*, that the defendant negligently designed the tank. The trial court dismissed the negligence count, but the appellate court reversed. This court upheld the trial court, stating that there can be no recovery in tort solely for economic losses. The court said that "contract law, which protects expectation interests, provides the proper standard when a qualitative defect is involved." (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 81.) It was stated that " '[e]conomic loss' has been defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property ***' [citation] ***." *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 82.

Subsequently, in *Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, the trial court's dismissal of a homeowner's negligence count against a builder for defective construction of his home that he had purchased from a third party was affirmed. The plaintiff there sought recovery for the costs of repair or replacement of the defective construction. Applying *Moorman*, this court held that the homeowner could not recover in negligence solely for

economic losses resulting from the homeowner's disappointed commercial expectations. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177-78.) "To recover in negligence there must be a showing of harm above and beyond disappointed expectations. A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177.) See also *Shaw v. Ortell* (1984), 137 Ill. App. 3d 60, 68-69 (where the appellate court, following *Moorman* and *Redarowicz*, affirmed the trial court's dismissal of negligence counts against three defendants on the basis that the losses sustained involved simply "a consumer's commercial expectation").

The Supreme Court, too, recently held that there cannot be recovery in tort for economic loss. In *East River Steamship Corp. v. Transamerica Delaval, Inc.* (1986), 476 U.S. 858, 90 L. Ed. 2d 865, 106 S. Ct. 2295, the court affirmed the district court's dismissal of a negligence count seeking recovery for repair costs and lost income. There Seatrain Shipbuilding Corp. (Shipbuilding), which had an order to build oil tankers, contracted with the respondent, Transamerica Delaval, Inc. (Transamerica), to design, manufacture, and supervise the installation of turbines—the main propulsion units of the tankers. When the tankers were constructed their owners chartered them to the petitioners. The charter was for 20 to 22 years and required the petitioners to assume ownership responsibilities, including the payment of all costs of repair.

The turbines malfunctioned, the petitioners claimed, and they brought suit against Transamerica alleging that it had strict liability for design defects in the turbines of the ships, and that, "as part of the manufacturing process," Transamerica negligently supervised the installation of a valve involving the turbines in one of the tankers. The district court granted Transamerica's motion

for summary judgment. The Court of Appeals for the Third Circuit affirmed, stating that the damages the petitioners claimed resulted from its disappointed expectations of the quality of the product and were not recoverable in negligence or under strict liability. (*East River Steamship v. Delaval Turbine, Inc.* (3d Cir. 1985), 752 F.2d 903, 909-10.) In affirming, the Supreme Court stated that when the damage sustained results from a qualitative defect of the product and no person is injured or other property damaged, "the resulting loss is purely economic" (*East River Steamship v. Transamerica Delaval, Inc.* (1986), 476 U.S. 858, 870, 90 L. Ed. 2d 865, 876, 106 S. Ct. 2295, 2302) whether the damage was caused by gradual deterioration, internal breakage, or calamitous event. Any loss sustained "due to repair costs, decreased value, and lost profits is essentially the failure of the purchaser to receive the benefit of its bargain—traditionally the core concern of contract law." (*East River Steamship Corp. v. Transamerica Delaval, Inc.* (1986), 476 U.S. 858, 870, 90 L. Ed. 2d 865, 876, 106 S. Ct. 2295, 2302.) The court continued:

> "[A] manufacturer in a commercial relationship has no duty under either a negligence or strict products-liability theory to prevent a product from injuring itself.
>
> 'The distinction that the law has drawn between tort recovery for physical injuries and warranty recovery for economic loss is not arbitrary and does not rest on the "luck" of one plaintiff in having an accident causing physical injury. The distinction rests, rather, on an understanding of the nature of the responsibility a manufacturer must undertake in distributing his products.' *Seely v. White Motor Co.* 63 Cal. 2d, at 18, 403 P.2d, at 151. When a product injures only itself the reasons for imposing a tort duty are weak and those for leaving the party to its contractual remedies are strong.
>
> *** [W]hen a product injures itself, the commercial user stands to lose the value of the product, risks the dis-

pleasure of its customers who find that the product does not meet their needs, or, as in this case, experiences increased costs in performing a service." *East River Steamship Corp. v. Transamerica Delaval, Inc.* (1986), 476 U.S. 858, 871-72, 90 L. Ed. 2d 865, 877, 106 S. Ct. 2295, 2302.

The court observed that the only damage claimed was to the turbines operation; there was no injury or damage to persons or other property. Even assuming that Transamerica in fact did negligently supervise the installation, the court held that Transamerica "owed no duty under a products-liability theory based on negligence to avoid causing purely economic loss." *East River Steamship Corp. v. Transamerica Delaval, Inc.* (1986), 476 U.S. 858, 876, 90 L. Ed. 2d 865, 880, 106 S. Ct. 2295, 2304.

Anderson, citing *Ferentchak v. Village of Frankfort* (1984), 121 Ill. App. 3d 599, 606, *aff'd in part and rev'd in part on other grounds* (1985), 105 Ill. 2d 474, argues that *Moorman* should not bar recovery of solely economic losses in tort when the plaintiff has no other remedy available against the defendant.

In *Moorman,* after determining that the losses the plaintiff sought to recover resulted solely from its disappointed commercial expectations, this court held that the plaintiff's remedy must lie under the warranty provisions of the Uniform Commercial Code. (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 91-92.) However, that a warranty remedy was in fact available was not to be a condition of the dismissal of the negligence count, as the court held that the plaintiff's claim for breach of express warranty was barred by the statute of limitations (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 94). In *Redarowicz,* although the court held that the plaintiff had a cause of action against the builder through an im-

plied warranty of habitability, the dismissal of the negligence count was not conditioned upon the availability to the plaintiff of a contract or warranty remedy against the builder. (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177-78, 185.) Too, we note that in *East River* the Supreme Court, in holding that the petitioners had no cause of action in tort for the recovery of purely economic losses, did so knowing that the petitioners did not have a warranty action against Transamerica. *East River Steamship Corp. v. Transamerica Delaval, Inc.* (1986), 476 U.S. 858, 875, 90 L. Ed. 2d 865, 879, 106 S. Ct. 2295, 2303-04.

A plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract.

The additional costs Anderson incurred in redoing its work were purely economic losses; they arose solely from disappointed commercial expectations in that Anderson lost the anticipated profits of its contract with Ledbetter to perform the electrical work.

We would observe parenthetically that in any event Anderson does not consider that it is without an available remedy. It has a breach of contract action pending in the trial court against Ledbetter to recover the same damages that it sought under its negligence count.

Anderson argues that it should recover because this court, as it noted in *Moorman*, has held that economic losses are recoverable in tort "where one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 89, citing *Rozny v. Marnul* (1969), 43 Ill. 2d 54.) What was said has no application here. Anderson, in its complaint, alleged that Walther is a manufacturer of the precipitators; it did not

claim Walther was a supplier of information for the guidance of others in their business transactions and that it made negligent representations.

Anderson asked that, in the event we determine that the foregoing language from *Moorman* has no application, we remand the cause to the trial court to permit Anderson to ask leave to amend its complaint against Walther. The request to remand to allow Anderson to seek leave to amend its complaint for what would be the fifth time must be denied. On this record it simply cannot be said Walther was in the business of supplying information for the guidance of others in business transactions and had made negligent representations.

For the reasons stated, the judgment of the appellate court affirming the trial court's dismissal of Anderson's negligence count is affirmed.

*Judgment affirmed.*

JUSTICE SIMON, specially concurring:

While I concur with the majority opinion that Anderson did not suffer injury to an "interest that tort law traditionally protects" (*Redarowicz v. Ohlendorf* (1982), 92 Ill. 2d 171, 177), I concur specially to voice my concern over the majority's formalistic definition of economic loss.

The majority opinion finds Anderson's injury to be "purely economic loss" because it "arose solely from disappointed commercial expectations in that Anderson lost the anticipated profits of its contract with Ledbetter." (115 Ill. 2d at 153.) To conclude that an injury amounts to economic loss simply because it reduces or wipes out anticipated profits is too broad a sweep, and if applied mechanistically, such a rule could exclude from the definition of tortious conduct a wide array of negligent behavior. An example would be if a trespasser negligently started a fire on the precipitator worksite involved in

this case, destroying all of Anderson's installation work but none of its personal property. Should the cost of that calamity be borne by Anderson and not the trespasser merely because Anderson's injury was confined to lost profits?

As the example illustrates, the fact that the injury in the case before us is observable in the form of lost profits—when it might equally well have been claimed that Walther's negligence caused the physical destruction of installation preparations—is not the legally significant factor. Judges should "look to the policies behind the regimes of torts and contracts to see which is more appropriate" for assigning the loss in the case at hand (*Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 96 (Simon, J., specially concurring)), and the court should be less concerned with the metaphysical distinction between injuries to property versus profits than with the circumstances by which an interest in either has been injured.

Under these circumstances, Anderson's lost profits are properly labeled "economic loss" (denoting only that they are losses for which the regime of contract law provides any appropriate rights and remedies) because they were caused by allegedly deficient services provided in accordance with Anderson's contract with Ledbetter. At the very least, Anderson entered into its arrangement with Ledbetter knowing that Walther would perform inspections and might require work to be redone. In that case, Walther has simply failed to perform its function according to the Anderson-Ledbetter contract with the diligence and care Anderson contemplated. On the other hand, by providing for Walther's assistance in the installation process, Ledbetter may have obviated the necessity for Anderson to hire outside experts or educate its own employees so that it could install the equipment without incurring unnecessary expense. If that were the

case, Walther's faulty inspections and advice have only failed to deliver the cost-efficient installation Anderson anticipated. See *Moorman Manufacturing Co. v. National Tank Co.* (1982), 91 Ill. 2d 69, 96 (Simon, J., specially concurring) ("if a product simply fails to live up to its promise, if it does not accomplish what it was supposed to the way it was supposed to, that is only an invasion of a contract-like interest").

In either case, any expectations Anderson may have had with regard to Walther's inspections are rooted in its contract with Ledbetter, and it follows that both the scope of legally protected expectations and any remedies for the disappointment of those expectations must also find their roots in Anderson's commercial agreement or in additional contractual terms supplied by law. Moreover, allowing Anderson to proceed in tort might subject Walther to a higher standard of care and greater potential liability than Walther had intended to undertake when it entered into its contractual relationship with Ledbetter. (Stein, Cottrell and Friedlander, *A Blueprint for the Duties & Liabilities of Design Professionals After Moorman*, 60 Chi.-Kent L. Rev. 163, 176 (1984).) Since Anderson's commercial interests are defined by its relationship with Ledbetter, its proper course of recovery—if any is due—is to prosecute its action in contract against Ledbetter. Whether Anderson is entitled to recover from Ledbetter will depend upon the extent to which Anderson protected itself from Walther's negligent performances; Anderson had the opportunity to negotiate for such protection in its contract with Ledbetter, as well as by separate agreement which Anderson could have insisted on negotiating with Walther. If Anderson is successful, Ledbetter may be able to pass along the cost to Walther depending upon the extent of Walther's undertaking, and the cost will ultimately fall upon the party that agreed (whether explicitly or implic-

itly in fact or law) to bear it. See *Lloyd v. Murphy* (1944), 25 Cal. 2d 48, 54, 153 P.2d 47, 50 ("[i]f it was foreseeable there should have been provision for it in the contract, and the absence of such a provision gives rise to the inference that the risk was assumed"); *cf. J'Aire Corp. v. Gregory* (1979), 24 Cal. 3d 799, 598 P.2d 60, 157 Cal. Rptr. 407 (lessor's contractor liable in tort to commercial lessee where construction delays foreseeably cause loss of profits). See generally C. Fried, Contract As Promise 66 (1981).

The law of torts intervenes to protect individuals from the conduct of others. In cases such as this, however, the court does not seek to protect a party from wrongful conduct, but only to ascertain binding promises and intentions in such a way as will promote the certainty of contracts and the benefits of commerce. Because the question involved in this case is one of dividing risks and responsibilities among the participants in a commercial transaction according to their intentions, rather than one of protecting persons and property (including profits) from injury with rules that promote safety and reasonable conduct, we are correct in looking to contract law for the scale on which to weigh the merits of Anderson's complaint.