FIREMAN'S FUND INSURANCE COMPANY, as Subrogee of Neptune Construction Company, Inc., Plaintiff-Appellee, v. SEC DONOHUE, INC., f/k/a Donohue and Associates, Inc., Defendant-Appellant.

First District (6th Division)    No. 1—93—4075

Opinion filed June 7, 1996.

Paul F. Conarty, of Wheaton, for appellant.

Mark A. Schramm, of Esposito, Heuel & Schramm, of Chicago, for appellee.

JUSTICE EGAN delivered the opinion of the court:

The issue in this appeal is whether the holding in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982), bars a subcontractor's tort action against an engineer for purely economic damages. The plaintiff, Fireman's Fund Insurance Company (Fireman's), as subrogee of Neptune Construction Company, Inc. (Neptune), filed a complaint against the defendant, SEC Donohue, Inc. (Donohue), in which it alleged that Neptune had suffered damages in the amount of $57,754.03 for repair work caused by its reliance on engineering plans Donohue had negligently prepared. The judge denied the defendant's motion to dismiss under section 2—619(a)(9) of the Illinois Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1992)). At the defendant's request, the judge entered an Illinois Supreme Court Rule 308(a) finding (134 Ill. 2d R. 308(a)), but this court denied leave to appeal. After the defendant petitioned for leave to appeal in the supreme court, the supreme court ordered us to hear this case on its merits.

In its complaint, the plaintiff alleged the following. In April 1989, Neptune entered into an agreement with Artfield Builders to install underground water service for a project called "The Apartments of Oak Trails." As a subcontractor, Neptune was to dig a horizontal tunnel under property owned by the Illinois State Toll Highway Authority (Toll Authority) in order to make a connection with water supply lines across the tollway from the project.

In anticipation of this work, Donohue, an engineering firm, had supplied drawings and plans, which indicated where Neptune should dig the tunnel and use an auger to bore into the water supply lines. In breach of its duty to provide accurate information to those who would rely on this information, Donohue "carelessly and mistakenly" drafted plans and drawings that located the sites for digging and boring at a spot 73 yards south of the correct location.

In reliance on these plans, Neptune performed its work at the incorrect location, thereby damaging the shoulder of the Toll Authority property. The Toll Authority required Neptune to repair the shoulder at a cost of $57,754.02. Neptune made a claim for this amount to its insurer, Fireman's. Fireman's paid the claim and, therefore, became subrogated to Neptune's claim against Donohue.

The contract between Neptune and Artfield, which was attached

to the complaint, stated that Neptune was to perform its work "in accordance with the engineering plans, specifications and general conditions prepared by: DONOHUE & ASSOCIATES, INC., and on file at the office of [Artfield]."

The defendant filed a motion to dismiss this complaint pursuant to section 2—619 of the Code of Civil Procedure. The motion referred to an affidavit the defendant filed. In this affidavit, the defendant's vice-president, Fred Borich, asserted that, on October 28, 1988, Donohue had entered into a contract with Artfield Builders to perform engineering services for the Oak Trails project. He also asserted that Donohue had no contract with Neptune.

Attached to the Borich affidavit was the contract between Artfield and Donohue. The contract provided that Donohue was to provide engineering plans for

> "onsite and offsite improvements including: *** water mains ***. Offsite improvements are limited to *** water main from the parcel north to Central Road along the east side of East River Road and a single water main crossing the tollway and tying into the existing water main at the Shorewood Village Apartment complex."

In addition, Donohue was to prepare a project manual to describe the scope and nature of the construction proposed in its plans. The contract further provided that it was not to be construed to give Donohue the responsibility to "direct or supervise construction means, methods, techniques, sequence, or procedures of construction selected by contractors or subcontractors."

The defendants asserted in their motion to dismiss that the plaintiff's claim was barred by the supreme court's decision in *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 555 N.E.2d 346 (1990), in which the court held that, under *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982), there could be no tort claim against an architect for purely economic losses. The defendant further asserted that the plaintiff's claim did not come within the negligent misrepresentation exception to the *Moorman* doctrine. In its response to this motion, the plaintiff argued that its claim fell within this exception.

On August 30, 1993, the judge denied the defendant's motion to dismiss without prejudice. On November 9, 1993, he granted the defendant's motion for a Rule 308 finding on the following question:

> "Is a professional engineer who prepares plans and specifications for a construction project in the business of supplying information to others for the guidance of the recipient in its business dealings with third parties and liable in tort for negligent

misrepresentations under *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443, 61 Ill. Dec. 746 (1982)[?]"

■ We begin our analysis with a discussion of the development of the *Moorman* doctrine. In *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69, 435 N.E.2d 443 (1982), the court held that purely economic losses may not be recovered in an action for strict liability in tort or for negligence. In *Moorman*, the plaintiff purchased a grain-storage tank from the defendant. Several years later, a crack developed in the tank. The plaintiff sued the defendant for its loss of use of the tank and for the cost of repairs. *Moorman*, 91 Ill. 2d at 73. The plaintiff based its action on theories of strict liability in tort, misrepresentation, negligence and breach of express warranty.

The *Moorman* court held that the plaintiff could not recover for purely economic losses under its theories of negligence or strict liability in tort, and it could not recover for an innocent misrepresentation by the defendant. The court defined "economic loss" as

" 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits— without any claim of personal injury or damage to other property ***' [citation] as well as 'the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold.' [Citation.]" *Moorman*, 91 Ill. 2d at 82.

The court explained that a purchaser should not be allowed to recover under either strict liability in tort or negligence when its harm "resulted from a qualitative defect relating to the purchaser's expectation in terms of the product's fitness to perform its intended function." *Moorman*, 91 Ill. 2d at 85-86. To allow such recovery would interfere with the framework of the Uniform Commercial Code (UCC) for governing a purchaser's recovery of economic losses. *Moorman*, 91 Ill. 2d at 88.

The *Moorman* court provided two exceptions to its prohibition on recovering economic losses in tort. Economic losses are recoverable if a party makes intentionally false representations or if "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman*, 91 Ill. 2d at 89, citing *Rozny v. Marnul*, 43 Ill. 2d 54, 250 N.E.2d 656 (1969).

Although the *Moorman* decision was based on a desire to preserve the framework of the UCC, the court held in *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146, 503 N.E.2d 246 (1986), that *Moorman* applies to the provision of services as well as products.

In addition, the court held that *Moorman* bars recovery in tort for economic losses regardless of a plaintiff's ability to recover through a contract action. *Anderson*, 115 Ill. 2d at 153.

In *Anderson*, the plaintiff, an electrical contractor, had entered into a contract to install precipitator units for one of the defendants, Ledbetter. Another defendant, the manufacturer of the precipitator units, had a contract with Ledbetter, under which it had a duty to supervise the installation of the units. The manufacturer had no contract with the plaintiff. The plaintiff sued the manufacturer for negligently performing its duty to supervise the installation, as a result of which the plaintiff incurred additional costs of $288,802.44.

The *Anderson* court decided that the plaintiff's negligence action against the manufacturer was barred by *Moorman* because the plaintiff alleged only economic losses. The court reasoned that a buyer's loss of the benefit of his bargain is not an interest protected by tort law. *Anderson*, 115 Ill. 2d at 150, citing *Redarowicz v. Ohlendorf*, 92 Ill. 2d 171, 441 N.E.2d 324 (1982). The plaintiff could not recover for purely economic losses in tort, regardless of whether it had a contractual remedy.

In 1993, the supreme court decided that *Moorman* would not apply to tort claims of professional malpractice against attorneys. *Collins v. Reynard*, 154 Ill. 2d 48, 607 N.E.2d 1185 (1992). The court explained that its ruling was based on historical precedent rather than logic. It followed a "long line" of Illinois cases allowing plaintiffs to recover in tort for lawyer malpractice. *Collins*, 154 Ill. 2d at 50. The court expressly limited its decision to the field of attorney malpractice.

Before the supreme court decided *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 555 N.E.2d 346 (1990), there was a split in the appellate court over whether a plaintiff could recover purely economic losses in professional malpractice actions against architects and engineers. The courts that held that *Moorman* did not bar recovery in these circumstances did so on the basis that to apply *Moorman* would conflict with a long line of Illinois cases allowing plaintiffs to recover the cost of repairing a defective structure in actions against architects for professional negligence. See *People ex rel. Skinner v. FGM, Inc.*, 166 Ill. App. 3d 802, 520 N.E.2d 1024 (1988) (holding that *Moorman* did not bar a plaintiff's negligence claim against a firm of engineers and architects); *Rosos Litho Supply Corp. v. Hansen*, 123 Ill. App. 3d 290, 462 N.E.2d 566 (1984) (holding that *Moorman* did not bar a plaintiff's negligence claim against an architect).

Other courts held that *Moorman* did bar such actions on the

basis that *Moorman* prohibited recovery in tort for a plaintiff's defeated expectations in a commercial bargain. *Tolona Pizza Products Corp. v. Davy McKee Corp.*, 187 Ill. App. 3d 365, 543 N.E.2d 225 (1989) (claim against an architectural and engineering firm barred); *Fence Rail Development Corp. v. Nelson & Associates, Ltd.*, 174 Ill. App. 3d 94, 528 N.E.2d 344 (1988) (claim against an architectural firm barred); *People ex rel. Skinner v. Graham*, 170 Ill. App. 3d 417, 524 N.E.2d 642 (1988) (claim against architects and engineers barred); *Santucci Construction Co. v. Baxter & Woodman, Inc.*, 151 Ill. App. 3d 547, 502 N.E.2d 1134 (1986) (claim against an engineering firm barred); *Bates & Rogers Construction Corp. v. North Shore Sanitary District*, 128 Ill. App. 3d 962, 471 N.E.2d 915 (1984), *aff'd*, 109 Ill. 2d 225, 486 N.E.2d 902 (1985) (claim against an engineering firm barred); *Palatine National Bank v. Charles W. Greengard Associates, Inc.*, 119 Ill. App. 3d 376, 456 N.E.2d 635 (1983) (claim against an engineering firm barred).

In *2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 555 N.E.2d 346 (1990), the court decided that a plaintiff could not recover purely economic damages in a tort action against architects and engineers by answering the following certified question in the negative:

> "Should there be an exception to the rule set forth in *Moorman* which would permit Plaintiffs seeking to recover purely economic losses due to defeated expectations of a commercial bargain to recover from an architect or engineer in tort?" *2314 Lincoln*, 136 Ill. 2d at 306.

In *2314 Lincoln*, the plaintiff, a condominium association, sued to recover the cost of repairs to the building in which their association was located. The developer of the condominiums had hired the defendant architecture firm, Mann, Gin, Ebel & Frazier, to provide plans and specifications for the project. At the completion of the project, the plaintiff discovered defects in the building, including a leaking roof, inadequate heating and cooling systems, loose windows and doors and a settling garage. *2314 Lincoln*, 136 Ill. 2d at 305. The plaintiff sued the architecture firm, but the judge dismissed all of the counts of the complaint except a negligence count against the firm. *2314 Lincoln*, 136 Ill. 2d at 303-04.

The *2314 Lincoln* court held that there was no exception to the *Moorman* doctrine for architectural malpractice: "Consistent with *Moorman* and its progeny, we answer the certified question in the negative and hold today that a tort action will not lie in the circumstances described." *2314 Lincoln*, 136 Ill. 2d at 312. In response to an argument by the plaintiff, the court also addressed the issue of

whether the intentional or negligent misrepresentation exception to *Moorman* would apply to the case before it. The court concluded that this exception would not apply because the plaintiff had failed to plead either of these theories. The court further explained:

> "Moreover, while it may be the case that an architect does in fact supply information relied on by others, we do not believe that the character of that function should be overstated. Discussing the question, it has been observed:
>
>> 'Obviously, a great many businesses involve an exchange of information as well as of tangible products—manufacturers provide operating or assembly instructions, and sellers provide warranty information of various kinds. But if we ask what the product is in each of these cases, it becomes clear that the product (a building, precipitator, roofing material, computer or software) is not itself information, and that the information provided is merely incidental.' [Citation.]
>
> In the usual case, the information supplied by the architect is transformed into the building itself." *2314 Lincoln*, 136 Ill. 2d at 313.

Even more recently, the supreme court held in *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503 (1994), that the *Moorman* doctrine does not bar recovery for economic losses for professional malpractice actions against accountants. The court reasoned:

> "The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client." *Congregation*, 159 Ill. 2d at 162.

The court explained that, as skilled professionals, accountants have a duty of reasonable professional competence that exists independent of any contract.

The court also supported its holding by comparing accountants to attorneys. The court explained that accountants are more like attorneys than architects because "the ultimate result of the relationship between the professional and client is something intangible." *Congregation*, 159 Ill. 2d at 163.

We now turn to an application of these principles to the certified question before us. The plaintiff does not dispute that the losses it claims in its complaint are purely economic. The parties disagree, however, (1) whether *Moorman* applies to engineers in general and (2) whether the negligent misrepresentation exception to *Moorman* applies in this case.

The defendant asserts that the judge erred in denying its motion to dismiss because the decision in *2314 Lincoln* bars the plaintiff's

claim for economic losses. The plaintiff counters that this decision does not bar its action because the court's holding applied only to architects.

We think that the holding in *2314 Lincoln* requires us to find that a plaintiff may not recover purely economic losses in a tort action against an engineer. First, we believe that the holding in *2314 Lincoln* could be interpreted as prohibiting such actions. Although the case involved a claim against only an architect, and the court's discussion focuses on professional negligence by architects, the certified question in that case was whether the plaintiffs could recover economic losses in a tort action against an architect *or an engineer*. The court gave an unqualified negative answer to this question.

Second, even if the *2314 Lincoln* holding were limited to architects, we can find no substantive difference between architects and engineers for purposes of the *Moorman* doctrine. We note that, in several appellate court opinions applying *Moorman* to bar tort actions against architects and engineers, this court has not made any distinction between the two professions. See *Tolona Pizza Products Corp. v. Davy McKee Corp.*, 187 Ill. App. 3d 365, 543 N.E.2d 225 (1989) (claim against an architectural and engineering firm barred); *People ex rel. Skinner v. Graham*, 170 Ill. App. 3d 417, 524 N.E.2d 642 (1988) (claim against architects and engineers barred).

In addition, the court's decision in *Congregation* supports a conclusion that the *Moorman* doctrine should apply to claims against engineers. In that case, the court decided that the *Moorman* doctrine should not apply to accountants because they were more like attorneys, to whom the doctrine does not apply, than architects, to whom the doctrine does apply. This analogy was based on the fact that the ultimate result of the work by either an attorney or an accountant was an intangible product. See *Congregation*, 159 Ill. 2d at 163. Following this reasoning, the *Moorman* doctrine should not apply to engineers because they are more like architects than attorneys. Like an architect, the ultimate result of an engineer's work is a tangible product.

Having concluded that the *Moorman* doctrine bars recovery in tort against engineers for purely economic losses, we must determine whether the negligent misrepresentation exception the court provided in *Moorman* applies to this case. As *Moorman* states, the negligent misrepresentation exception applies when "one who is in the business of supplying information for the guidance of others in their business transactions makes negligent representations." *Moorman*, 91 Ill. 2d at 89; see also *Board of Education v. A,C&S, Inc.*, 131 Ill. 2d 428, 546 N.E.2d 580 (1989); *Anderson*, 115 Ill. 2d at 154; *Rosen-*

*stein v. Standard & Poor's Corp.*, 264 Ill. App. 3d 818, 823, 636 N.E.2d 665 (1993) ("The focus [of the negligent misrepresentation exception analysis] is whether one is in the business of supplying information for the guidance of others or whether the information that is supplied is merely ancillary to the sale or in connection with the sale of merchandise or other matter"). A critical question in this appeal is whether the defendant was in the business of supplying information.

The defendant asserts that the exception does not apply because it was not engaged in the business of supplying information for the guidance of others in their business transactions. The plaintiff disputes that the defendant was not in the business of supplying information for the guidance of others in their business transactions.

Again, we are guided by the court's decision in *2314 Lincoln*. Although the negligent misrepresentation issue was not pleaded in that case, as it is in this case, the court addressed that issue. The court indicated in *obiter dicta* that the negligent misrepresentation exception would not apply to architects. The court reasoned that architects were not in the business of supplying information because the information they provided was incorporated into a tangible product, the building itself. The court stated that, although architects did provide information, the character of that function should not be overstated. *2314 Lincoln*, 136 Ill. 2d at 313.

Similarly, the information an engineer provides is incorporated into a product, in this case, the water system. This court has indicated previously that engineering services are a "product." See *Palatine*, 119 Ill. App. 3d at 380 ("The product sold in this case consisted of the design and construction of a storm and surface water removal system to be constructed on Loch Wood Acres"); see also *Fence Rail*, 174 Ill. App. 3d at 100 (citing *Palatine*); *Bates*, 128 Ill. App. 3d at 974 (citing *Palatine*). According to the supreme court's reasoning in *2314 Lincoln*, the information the engineer provides is merely incidental to this final product.

The plaintiff argues that this case is distinguishable from *2314 Lincoln* because, at the time its cause of action arose, the information had not yet been incorporated into the water system as the architect information had been incorporated into the condominium building at the time the *2314 Lincoln* condominium association's action arose. The defendant's plans were, therefore, information rather than a product.

■ While we appreciate the logic of the plaintiff's argument, we must reject it. In determining whether *Moorman* applies to a particular form of professional malpractice, the supreme court has focused on the *ultimate result* of the profession's work. See *Congregation*, 159

Ill. 2d at 163. We cannot rest our determination of the application of *Moorman* in this case, therefore, on the fact that the defendant's plans were merely information before they were incorporated into the water system. We must look to the ultimate result of the defendant's work, which, like the result of an architect's work, was a tangible product. Based on this reasoning and the *2314 Lincoln* court's discussion of the negligent misrepresentation exception as it applies to architects, we cannot find that the defendant was in the business of supplying information. Consequently, we must hold that the negligent misrepresentation exception to the *Moorman* doctrine does not apply in this case. See *Anderson*, 115 Ill. 2d at 154 (finding that the *Moorman* negligent misrepresentation exception did not apply because the manufacturer was not in the business of supplying information for the guidance of others in their business transactions).

Given our conclusions that *Moorman* bars tort claims against engineers for purely economic losses and that the negligent misrepresentation exception to *Moorman* does not apply in this case, we answer the certified question in the negative. In its brief, the plaintiff urges us to modify the certified question to remove the reference to "third parties." The plaintiff asserts that Illinois courts require only that a party be engaged in the business of supplying information for the guidance of others in their business dealings, not that a party be engaged in the business of supplying information for the guidance of others in their business dealings *with third parties*. Although we note that no Illinois Supreme Court decision has imposed this third-party requirement (see, *e.g., Board of Education*, 131 Ill. 2d at 454; *Anderson*, 115 Ill. 2d at 154; *Moorman*, 91 Ill. 2d at 89; see also N. Rifkind, *Negligent Misrepresentation in Illinois: The Third Party (Non)requirement*, 82 Ill. B.J. 668 (1994)), we need not modify the certified question because, with or without a third-party requirement, our answer to the certified question would be the same.

In deciding that *Moorman* does not apply to professional malpractice claims against engineers, we note Justice Heiple's statement in his dissent in *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 636 N.E.2d 503 (1994) (Heiple, J., dissenting), that the application of *Moorman* to professional malpractice has developed in a confusing fashion, such that litigants and trial judges must guess at the exception of the month. *Congregation*, 159 Ill. 2d at 186-88 (Heiple, J., dissenting). He suggested in this dissent that the court should take the opportunity

> "to reevaluate the application of *Moorman* and remove its protection for all types of professional services, rather than engage in a

case-by-case determination of whether a given profession owes some undefinable extracontractual duty to clients or not." *Congregation*, 159 Ill. 2d at 190 (Heiple, J., dissenting). We agree that the application of *Moorman* to professional malpractice is not as clear as we would prefer it to be. But one thing is clear: We must decide the case one way or the other. And we must decide it by exercising our best judgment; that best judgment is made pursuant to the guidance the supreme court has provided us. *2314 Lincoln* is the most appropriate guidance we have found.

Remanded for further proceedings consistent with this opinion.

ZWICK, P.J., and RAKOWSKI, J., concur.