(No. 81439.—

FIREMAN'S FUND INSURANCE COMPANY, as Subrogee of Neptune Construction Company, Inc., Appellant, v. SEC DONOHUE, INC., f/k/a Donohue & Associates, Inc., Appellee.

*Opinion filed April 17, 1997.*

HEIPLE, C.J., joined by HARRISON and NICKELS, JJ., dissenting.

Mark A. Schramm, of Esposito, Heuel & Schramm, of Chicago, for appellant.

Paul F. Conarty, of Wheaton, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

The question presented for review is whether the economic loss doctrine, as enunciated by this court in *Moorman Manufacturing Co. v. National Tank Co.*, 91 Ill. 2d 69 (1982), bars a tort action against an engineer for purely economic losses. We hold that it does.

## BACKGROUND

This cause is before us following a motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)). The motion admits all well-pled allegations in the complaint and reasonable inferences to be drawn from the facts. *Mayfield v. ACME Barrel Co.*, 258 Ill. App. 3d 32, 34 (1994); *Chicago Title & Trust Co. v. Weiss*, 238 Ill. App. 3d 921, 924 (1992).

The complaint alleges as follows. Plaintiff, Fireman's

Fund Insurance Company (Fireman's), is the subrogee of Neptune Construction Company (Neptune). Neptune is a contractor in the business of constructing underground water service. Defendant, SEC Donohue, Inc., formerly known as Donohue and Associates, Inc. (Donohue), is a professional engineering firm.

In April 1989, Neptune entered into a subcontract agreement with Artfield Builders to install underground water service for an apartment complex located on East River Road between Golf and Central Roads in Des Plaines. Neptune was to tunnel horizontally from the complex, under a state tollway, and connect with water supply lines on the opposite side of the tollway. Neptune was to perform its work "in accordance with the engineering plans, specifications and general conditions prepared by: DONOHUE & ASSOCIATES, INC."

Donohue was the project engineer. Under Donohue's contract with Artfield, Donohue was to provide engineering plans for improvements that included water supply lines. In anticipation of Neptune's work, Donohue supplied drawings and plans that specified where Neptune should dig the tunnel and use an auger to bore into the water supply lines.

Donohue's drawings and plans erroneously located the site for digging and boring at a spot approximately 73 yards south of the correct location. Relying on Donohue's plans, Neptune worked at the wrong location, thereby damaging the shoulder of the tollway. The Illinois State Toll Highway Authority required Neptune to repair the tollway at a cost of $57,754.02. Neptune made a claim to its insurer, Fireman's, for this amount. Fireman's paid the claim, becoming subrogated to Neptune's claim against Donohue.

Fireman's brought a negligence action against Donohue in the circuit court of Cook County. The complaint alleged that Donohue had the duty to provide accurate

information to those who would rely on it, such as Neptune; that Donohue breached that duty by "carelessly and mistakenly" locating the site for digging and boring 73 yards south of the correct location; and that Neptune's damages were proximately caused by its reliance on Donohue's erroneous work.

The trial court denied defendant's motion to dismiss pursuant to section 2—619(a)(9) of the Code of Civil Procedure (735 ILCS 5/2—619(a)(9) (West 1994)). The trial court subsequently certified the following question for interlocutory review (see 134 Ill. 2d R. 308):

> "Is a professional engineer who prepares plans and specifications for a construction project in the business of supplying information to others for the guidance of the recipient in its business dealings with third parties and liable in tort for negligent misrepresentations under *Moorman Manufacturing Co. v. National Tank Co.*, [citation][?]"

The appellate court answered the question in the negative, reversing the trial court. 281 Ill. App. 3d 789. The appellate court concluded that the economic loss doctrine applies to engineers in general. 281 Ill. App. 3d at 796. The appellate court also concluded that *Moorman*'s negligent misrepresentation exception to the economic loss doctrine (*Moorman*, 91 Ill. 2d at 89) did not apply in this case. 281 Ill. App. 3d at 798. We allowed Fireman's petition for leave to appeal (155 Ill. 2d R. 315), and now affirm the appellate court.

## DISCUSSION

The question certified for interlocutory review presents two issues. The first issue regards the form of the question itself; the second issue regards an exception to the economic loss doctrine. Before addressing these issues, some background is in order.

At common law, purely economic losses are generally not recoverable in tort actions. *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d 233, 240 (1994). In *Moorman Manufacturing Co. v. National Tank Co.*,

91 Ill. 2d 69 (1982), this court enunciated the economic loss rule, and held that a products liability plaintiff cannot recover purely economic loss under the tort theories of strict liability, negligence, and innocent misrepresentation. *Moorman*, 91 Ill. 2d at 91.

This court has explained the rationale of the economic loss doctrine as follows:

> "In *Moorman*, this court [reasoned] that tort law would, if allowed to develop unchecked, eventually envelop contract law. Contract law serves a vital commercial function by providing sellers and buyers with the ability to define the terms of their agreements with certainty prior to a transaction. Where the duty of a seller has traditionally been defined by contract, therefore, *Moorman* dictates that the theory of recovery should be limited to contract although recovery in tort would be available under traditional tort theories." *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 159-60 (1994).

In *Anderson Electric, Inc. v. Ledbetter Erection Corp.*, 115 Ill. 2d 146 (1986), this court applied the economic loss rule to claims that services were performed negligently. This court also held that "[a] plaintiff seeking to recover purely economic losses due to defeated expectations of a commercial bargain cannot recover in tort, regardless of the plaintiff's inability to recover under an action in contract." *Anderson*, 115 Ill. 2d at 153.

In the present case, Fireman's does not dispute that its losses are purely economic. With this background in mind, we now address the issues presented for review.

## I. Certified Question

Both Fireman's and Donohue urged the appellate court to modify the certified question on appeal. The certified question, previously quoted, asks whether a professional engineer who prepares plans and specifications for a construction project is "in the business of supplying information to others for the guidance of the

recipient in its business dealings *with third parties* and liable in tort for negligent misrepresentations under *Moorman.*" (Emphasis added.) The parties contend that the reference to "third parties" is erroneous. We agree with the appellate court that "with or without a third-party requirement, our answer to the certified question would be the same." 281 Ill. App. 3d at 798. However, pursuant to our responsibility to maintain a sound and uniform body of precedent (*Hux v. Raben*, 38 Ill. 2d 223, 224-25 (1967)), we will address this issue. See 134 Ill. 2d R. 366(a)(5); *Schrock v. Shoemaker*, 159 Ill. 2d 533, 537 (1994).

In *Moorman*, this court articulated three exceptions to the economic loss rule: (1) where the plaintiff sustained personal injury or property damage resulting from a tortious event, *i.e.*, a sudden or dangerous occurrence (*Moorman*, 91 Ill. 2d at 86); (2) where the plaintiff's damages are proximately caused by a defendant's intentional, false representation, *i.e.*, fraud (*Moorman*, 91 Ill. 2d at 88-89); and (3) where the plaintiff's damages are proximately caused by a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions (*Moorman*, 91 Ill. 2d at 89). See *In re Chicago Flood Litigation*, 176 Ill. 2d 179, 202-03 (1997); *In re Illinois Bell Switching Station Litigation*, 161 Ill. 2d at 240-41. In each of these three situations, the plaintiff may recover in tort against the defendant.

In several subsequent decisions, this court has discussed the *Moorman* exception of a negligent misrepresentation by a defendant in the business of supplying information for the guidance of others in their business transactions. This court has never included an additional requirement that those business transactions must be made specifically with third parties. See, *e.g.*,

*2314 Lincoln Park West Condominium Ass'n v. Mann, Gin, Ebel & Frazier, Ltd.*, 136 Ill. 2d 302, 309 (1990); *Anderson*, 115 Ill. 2d at 153-54.

However, several appellate court decisions refer to an additional third-party requirement. See N. Rifkind, *Negligent Misrepresentation in Illinois: The Third Party (Non)requirement*, 82 Ill. B.J. 668 (1994). Appellate court decisions that refer to an additional third-party requirement (*e.g., Grass v. Homann*, 130 Ill. App. 3d 874, 878-79 (1984); *Black, Jackson & Simmons Insurance Brokerage, Inc. v. International Business Machines Corp.*, 109 Ill. App. 3d 132, 134-36 (1982)) are overruled on this point. We modify the certified question by deleting the reference to third parties. The question, as modified, is as follows:

> "Is a professional engineer who prepares plans and specifications for a construction project in the business of supplying information to others for the guidance of the recipient in its business dealings and liable in tort for negligent misrepresentation under *Moorman* ***[?]"

## II. Economic Loss Doctrine

We first address Fireman's suggestion that we abandon this court's application of the economic loss doctrine to the furnishing of services, and replace it "with a traditional tort duty analysis." We decline the invitation. As this court has explained:

> "A provider of services and his client have an important interest in being able to establish the terms of their relationship prior to entering into a final agreement. The policy interest supporting the ability to comprehensively define a relationship in a service contract parallels the policy interest supporting the ability to comprehensively define a relationship in a contract for the sale of goods. It is appropriate, therefore, that *Moorman* should apply to the service industry. Just as a seller's duties are defined by his contract with a buyer, the duties of a provider of services may be defined by the contract he enters into with his client. When this is the case, the economic loss

doctrine applies to prevent the recovery of purely economic loss in tort.

\* \* \*

The evolution of the economic loss doctrine shows that the doctrine is applicable to the service industry only where the duty of the party performing the service is defined by the contract that he executes with his client. Where a duty arises outside of the contract, the economic loss doctrine does not prohibit recovery in tort for the negligent breach of that duty." *Congregation of the Passion*, 159 Ill. 2d at 161-62.

### A. *Application to Engineers*

The appellate court held as follows: "We think that the holding in *2314 Lincoln Park West* requires us to find that a plaintiff may not recover purely economic losses in a tort action against an engineer." 281 Ill. App. 3d at 796. Fireman's assigns error to this holding and to the appellate court's reliance on *2314 Lincoln Park West*.

We agree with the appellate court that, based on *2314 Lincoln Park West*, the economic loss doctrine applies to engineers. In *2314 Lincoln Park West*, this court held that the economic loss doctrine applied to architects, preventing the recovery of purely economic losses in tort. This court reasoned that "[t]he architect's responsibility originated in its contract with the original owner, and in these circumstances [purely economic loss] its duties should be measured accordingly." *2314 Lincoln Park West*, 136 Ill. 2d at 317.

*2314 Lincoln Park West* involved a claim against several parties, including an architectural firm. However, the certified question in that case was:

" 'Should there be an exception to the rule set forth in *Moorman* which would permit Plaintiffs seeking to recover purely economic losses due to defeated expectations of a commercial bargain to recover from an architect or *engineer* in tort?' " (Emphasis added.) *2314 Lincoln Park West*, 136 Ill. 2d at 306.

This court concluded that, "[c]onsistent with *Moorman* and its progeny, we answer the certified question in the negative and hold today that a tort action will not lie in the circumstances described." *2314 Lincoln Park West*, 136 Ill. 2d at 312.

Further, the appellate court could not find any substantive difference between architects and engineers for purposes of the economic loss rule (281 Ill. App. 3d at 796 (and cases cited therein)), nor can we. In *2314 Lincoln Park West*, this court likewise did not distinguish architects from engineers. *2314 Lincoln Park West*, 136 Ill. 2d at 311. We hold that the economic loss doctrine bars recovery in tort against engineers for purely economic losses.

### B. *Negligent Misrepresentation Exception*

Again guided by *2314 Lincoln Park West*, the appellate court also held that the negligent misrepresentation exception to the economic loss doctrine found in *Moorman* did not apply in this case. Fireman's assigns error to this holding.

The focus of *Moorman*'s negligent misrepresentation exception to the economic loss doctrine is whether the defendant is in the business of supplying information for the guidance of others, or whether the information that is supplied is merely ancillary to the sale or in connection with the sale of merchandise or other matter. 281 Ill. App. 3d at 797, quoting *Rosenstein v. Standard & Poor's Corp.*, 264 Ill. App. 3d 818, 823 (1993). In *dicta* in *2314 Lincoln Park West*, this court reasoned that although an architect supplies information, that information is incidental to a tangible product, *i.e.*, a structure, and is usually transformed into the structure itself. *2314 Lincoln Park West*, 136 Ill. 2d at 313.

Fireman's attempts to distinguish this case from *2314 Lincoln Park West* are based on the following facts. In *2314 Lincoln Park West*, the architect's information had

been incorporated into the building at the time the action arose. Fireman's points out, however, that at the time this action arose, Donohue's drawings and plans had not been incorporated into the water supply system. Indeed, Donohue's plans could never be incorporated into the water system because they were erroneous. Therefore, according to Fireman's, Donohue's drawings and plans were information rather than a product, and *Moorman*'s negligent misrepresentation exception to the economic loss doctrine applies to this case.

We cannot accept Fireman's argument. The appellate court correctly observed that this court, in determining whether the economic loss doctrine applies to a case of professional malpractice, focuses on the ultimate result of the professional's work. *Congregation of the Passion*, 159 Ill. 2d at 163. The appellate court correctly reasoned that it could not base its determination on the fact that Donohue's plans were not, or could not be, incorporated into the water supply system. Rather, the appellate court correctly looked to the ultimate result of Donohue's work, which was a tangible object, *i.e.*, the water supply system. 281 Ill. App. 3d at 797-98. As we explained in *Congregation of the Passion*, 159 Ill. 2d at 163:

> "In contrast to the relationship between an attorney or accountant and their client, the relationship between an architect and his client produces something tangible, such as a plan that results in a structure. The characteristics of a tangible object are readily ascertainable, and they can be memorialized in a contract and studied by the parties."

Donohue's plans and drawings were incidental to a tangible product, *i.e.*, the water supply system. The accuracy of such plans can be memorialized in contract terms. We hold that *Moorman*'s negligent misrepresentation exception to the economic loss doctrine does not apply in this case.

## CONCLUSION

Fireman's attempts to recover purely economic loss resulting from Donohue's product that did not meet commercial expectations. This interest was meant to be protected by contract law rather than tort law.

For the foregoing reasons, the judgment of the appellate court is affirmed as modified, and the cause is remanded to the circuit court of Cook County.

*Affirmed as modified;*
*cause remanded.*

CHIEF JUSTICE HEIPLE, dissenting:

I dissent from the majority opinion because I believe that the *Moorman* doctrine should no longer apply to professional malpractice cases. We should take this opportunity to reevaluate the application of *Moorman* and remove its protection for professional services, rather than continue to engage in a case-by-case determination of whether a given profession owes some undefinable extracontractual duty to clients. See *Congregation of the Passion, Holy Cross Province v. Touche Ross & Co.*, 159 Ill. 2d 137, 186-92 (1994) (Heiple, J., dissenting, joined by Harrison, J.). The majority, however, has seen fit to continue a piecemeal approach by applying the *Moorman* doctrine to professional malpractice of architects and now engineers but not to attorneys or accountants. In so doing, this court has failed to coherently differentiate between these professional groups, thereby placing trial judges and litigants in the unenviable position of guessing which additional professionals will receive protection under *Moorman's* economic loss doctrine.

Accordingly, I respectfully dissent.

JUSTICES HARRISON and NICKELS join in this dissent.